IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIM BRAND and DEENA BRAND, individually and as next friend of Kayla Brand, a minor, </br></br>      Plaintiffs, </br></br> v. </br></br> HOLMES AIR TAIWAN, INC., and THE HOLMES GROUP, INC., </br></br>      Defendants. | Cause No. 05-CV-862-WDS |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant The Holmes Group, Inc.'s motion for summary judgment (Doc. 25), to which plaintiffs have responded (Doc. 32), and The Holmes Group, Inc., has replied (Doc. 35).

## BACKGROUND

On December 7, 2005, plaintiffs Jim Brand and Deena Perkins,[1] individually and as next friend of minor Kayla Brand, filed a four count complaint against defendants claiming strict products liability and negligence. Defendant The Holmes Group, Inc., manufactures and sells humidifiers. Plaintiffs allege that then 15-month-old Kayla Brand was injured at her home in Greenville, Illinois, by a "Warm Mist Humidifier" produced and sold by defendant, which was set up in her room by her mother. Plaintiffs further allege that the humidifier at issue was

---

[1] Deena Perkins and Jim Brand were married in 1990, and were married but separated when Kayla Brand suffered the injuries at issue. Deena Perkins was known as Deena Brand at the time this lawsuit was filed, but is now known as Deena Perkins.

defective and unreasonably dangerous for its foreseeable use in one or more of the following ways: (A) it allowed the water in the vaporizing chamber of the humidifier to reach temperatures high enough to cause permanent injury and damage should the water be spilled on a person; and/or (B) it failed to adequately warn users and consumers that water in the humidifier could reach temperatures high enough to cause permanent injury and damage should the water be spilled on a person. Plaintiffs also allege that defendant was negligent in that: (A) it produced, marketed and sold the humidifier which allowed the water in the vaporizing chamber to reach temperatures high enough to cause permanent injury and damage should the water be spilled on a person; and (B) it failed to adequately warn users and consumers that water in the humidifier could reach temperatures high enough to cause permanent injury and damage should the water be spilled on a person. (Doc. 1, pp. 2-3, 7).

Jim Brand purchased the humidifier, read the product instructions and warnings and passed on the significant information he read with respect to the operation and safety of the humidifier to Deena. (Doc. 32, p. 4; Aff. of Deena Perkins, Doc. 32, Ex. 3, ¶ 3; Aff. of Jim Brand, Doc. 32, Ex. 2, ¶ 7). Deena Perkins did not read the instruction booklet that accompanied the humidifier. (Perkins Depo., Doc. 27, Ex. A, p. 16). Deena Perkins did not read the warning on the top of the mister, which states "Mist can be HOT. Keep away from children." (Perkins Depo., Doc. 27, Ex. A, p. 22; Doc. 26, p. 4). Jim Brand did read that warning. (Brand Depo., Doc. 27, Ex. B, p. 16). Additionally, the Owner's Guide contained the following warnings in the Important Safety Instructions section:

> NEVER place the humidifier in an area where it is accessible to small children.
>
> NEVER tilt, move, or attempt to empty unit while it is operating.

> Shut off and unplug before removing the water tank and moving the unit. DO NOT attempt to remove the water tank within 15 minutes after the humidifier is turned off and unplugged. Serious injury may result.

(Doc. 26-1, p. 4) (emphasis in original).

Deena Perkins admitted in her deposition testimony that she knew that steam is created when water turns to vapor at the boiling point of water, and that water cooler than boiling water could cause burn injuries. (Perkins Depo., Doc. 27, Ex. A, pp. 26-27). Mr. Brand admitted in deposition testimony that one of the ways to create steam is to boil water, and he understood that is what was going on in the humidifier. (Brand Depo. Doc. 27, Ex. B, p. 19).

On the date of Kayla's injuries, the humidifier was in her bedroom, on top of a towel which was placed on a television tray that was approximately the same height as Kayla. (Perkins Depo., Doc. 27, Ex. A, pp. 33-34, 36). Jim Brand was not present, as he and Deena had separated and she had obtained an order of protection. (Brand Depo., Doc. 27, Ex. B, p. 22-23). As described by Deena Perkins, the injury occurred was as follows:

> The girls had been taking a nap. And generally at nap time they threw their pacifiers over the sides of their cribs either before they went to sleep or when they woke up. So they had woken up from [their] nap and we were in the other room playing and watching TV. I realized that we had no pacifiers. I went back in the room to collect some pacifiers and was bending underneath the crib to reach to the far side of [Kayla's twin sister's crib] when I heard a thump and Kayla started screaming, and [Kayla's twin sister] was standing back in the corner by the window and the closet. And she was screaming. I picked her up. The humidifier was on the floor. Her clothes were still very hot. . . . So just the first thought in my mind was to take her clothes off of her because—I don't know why. It just came into my mind. When I took her clothes off of her, her skin was coming off with them.

(Perkins Depo., Doc. 27, Ex. A, pp. 38-39). Kayla was burned on her stomach, right arm and bottom. (Perkins Depo., Doc. 27, Ex. A, p. 56). Deena Perkins stated in her deposition testimony

that Kayla's injuries do not impact her day-to-day activities. (Perkins Depo., Doc. 27, Ex. A, p. 57).

Defendant The Holmes Group, Inc. now moves for summary judgment on all claims.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

A district court sitting in diversity must apply the conflict of law rule for the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, Illinois choice of law analysis requires the Court to apply Illinois law since this state has the "most significant relationship" to the case. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Illinois clearly has the most significant relationship to the case because it is the place of injury and no other state has a more significant relationship with the event or parties. *Esser v.*

*McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). Accordingly, the Court will apply Illinois substantive law in arriving at its decision.

## ANALYSIS

Defendant The Holmes Group, Inc. now moves for summary judgment on the following grounds: (1) under Illinois law, a plaintiff who does not read allegedly inadequate warnings cannot maintain a failure to warn claim; and (2) under Illinois law, simple products posing obvious risks are not dangerous beyond that which would be contemplated by an ordinary consumer as a matter of law. (Doc. 25, p. 1).

**1.     Were the warnings adequate?**

Plaintiffs seek to hold defendant liable under theories of negligence and strict liability, claiming that an adequate warning was not given regarding the dangerous nature of the product. If there is a known or foreseeable danger when the product is used in its normal or intended use, there is a duty to adequately warn. *Genaust v. Ill. Power Co.*, 23 Ill. App.3d 1023, 1031, 320 N.E.2d 412 (Ill. App. Ct. 1974), *aff'd* 343 N.E.2d 465 (Ill. 1976). Here, defendant admits that "[t]he Holmes Model HM5600 Warm Mist Humidifier provides humidity using steam, which is generated by boiling water," and that the heating element "may be extremely hot." (Doc. 26, p. 3). Thus, it is foreseeable that someone may be hurt by coming into contact with certain parts of the humidifier, so defendant included several warnings on the humidifier itself and in its packaging materials. The back of the humidifier states, "WARNING - When unit is lifted out of base, exposed heating element may be extremely hot. DO NOT touch or set down on carpet or any other surface which may get damaged by the heat." The top of the humidifier contains a warning which states, "CAUTION: Mist can be HOT. Keep away from children." The Owner's

Guide, included in the humidifier's packaging, states, "NEVER place the humidifier in an area where it is accessible to small children. NEVER tilt, move, or attempt to empty unit while it is operating. Shut off and unplug before removing the water tank and moving the unit. DO NOT attempt to remove the water tank within 15 minutes after the humidifier is turned off and unplugged. Serious injury may result." (Doc. 26, pp. 3-4) (emphasis in original documents). "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A, adopted by the Illinois courts in *Suvada v. White Motor Co.*, 210 N.E.2d 182 (1965).

The Court **FINDS** that the warnings presented were adequate, and if the warnings had been read and headed, Kayla's injuries would not have occurred. Defendant's motion for summary judgment is **GRANTED** as to plaintiffs' failure to warn claims contained in Counts I through IV.

**2.    Was the Product Defective or Unreasonably Dangerous?**

Plaintiffs also allege that defendants' product was defective and/or unreasonably dangerous under theories of negligence and strict liability.

To establish a negligence claim for a defective design of a product, a plaintiff must prove that either (1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity. *Blue v. Envtl. Eng'g, Inc.,* 828 N.E.2d 1128, 1141 (Ill. 2005) (*citing Carrizales v. Rheem Mfg. Co.*, 589 N.E.2d 569, 580 (Ill. App. Ct.

1991)). Plaintiffs have not alleged that defendant deviated from the standard of care, thus the only theory they proceed upon is that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity.

Illinois imposes strict liability for defective products upon one "who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." *Riordan*, 477 N.E.2d at 1298. The test to be applied is known as the consumer-expectation, or consumer-contemplation, test, which states: "A product is 'unreasonably dangerous' when it is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Blue*, 828 N.E.2d at 1138. Injuries are "not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come into contact with the product." *Id.*, *citing Hunt v. Blasius*, 74 Ill.2d 203, 211, 384 N.E.2d 368 (Ill. 1978). For instance, as defendant argues, a knife is not defective simply because it is sharp.

A "defective condition" is a condition "not contemplated by the ultimate consumer . . . which condition causes the product to fail to perform in the manner reasonably to be expected in light of its nature and intended function." *Id.*

Here, the ordinary consumer would presume that a steam humidifier could become extremely hot, and would in fact need to reach very high temperatures in order to work as intended. Indeed, plaintiffs themselves admitted in deposition testimony that they were aware that boiling water produces steam. Hot water is an inherent property of a steam humidifier. The humidifier at issue worked as it was designed to do so.

7

Thus, the Court **FINDS** that the product in question was not defective nor unreasonably dangerous. As stated above, the warnings given were adequate. Defendant's motion for summary judgment is **GRANTED** as to the remaining claims contained in Counts I through IV.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Doc. 25) is **GRANTED** on all grounds raised. The Clerk of the Court is **DIRECTED** to enter judgment in favor of defendant The Holmes Group, Inc., and against plaintiffs on all claims, each party to bear its own costs.

**IT IS SO ORDERED.**

**DATED: June 13, 2007.**

                                        **s/ WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**